AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
|  | ) | Case No. 3:19 mj 657 |
| DELANO WELLS | ) | |
| *Defendant(s)* | ) | |

FILED
RICHARD W. NAGEL
CLERK OF COURT
2019 NOV -5 PM 2: 49
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __8/29/19 and 9/9/19__ in the county of __Butler__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Making a false statement regarding firearms |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA JOHN REMICK-COOK, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-5-19

_____
*Judge's signature*

City and state: DAYTON, OHIO

SHARON L. OVINGTON, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

Now comes John Remick-Cook, Special Agent, Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, deposes and states the following:

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been so employed since March of 2015. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia. I also graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia, in February of 2016.

2. In my career with ATF, I have been assigned to and worked with the Cleveland Police Department's Gang Impact Unit and am currently assigned to an Organized Crime Task Force which investigates criminal organizations in the Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the Metropolitan Police Department in Washington D.C. where I served as a member of the Third District Crime Suppression Team, Narcotics and Special Investigations Division's Gun Recovery Unit and as an Investigator with the Criminal Investigations Division. I was employed in that capacity from December of 2008 to March of 2015. I have received additional training in several areas of law enforcement, including but not limited to Gang investigations, Narcotics interdiction and investigation and firearms interdiction and investigation. I am also a graduate of the University of New Hampshire where I received two Bachelor degrees in Sociology and Justice Studies in 2008.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not set forth all of my knowledge about this matter.

4. This affidavit is submitted in support of an application for criminal complaint against, and arrest warrant for, Delano **WELLS**. Based on the information stated below, I submit that there is probable cause to believe that on or about August 29, 2019 and on September 9, 2019, **WELLS** committed violations of 18 U.S.C. § 924(a)(2)(A), namely making false statements or representations with respect to information required by Chapter 44 of Title 18 of the United States Code.

## PROBABLE CAUSE

5. On November 4, 2019, Drug Enforcement Administration ("DEA") agents and task force officers were executing a federal search warrant at a location on 1454 Ruskin Road in Dayton, Ohio. At approximately 6:50 p.m., on November 4, 2019, agents and officers of the DEA and Dayton Police Department executed the search warrant. Agents and officers knocked on the door of the residence and announced their presence. After the knock and announce went unanswered, agents and officers made

1

entry into the residence. Upon entering the residence, a task force officer for the DEA descended a stairway to the basement of the residence. As the task force officer descended the stairway, the task force officer immediately came under gunfire from the basement and was struck by the gunfire.

6. Subsequently, agents and officers secured the residence and found that four individuals were located in the basement of the residence where the gunfire had originated. Investigators searched the basement of the residence and located approximately nine kilograms of suspected fentanyl, six plastic tubs containing suspected marijuana, a plastic bag containing suspected marijuana, three firearms, a drug press, a money counter, and approximately $50,000 in United States currency.

7. Two of the firearms were FN5-7, 5.7 caliber, pistols, both with extended magazines, loaded with armor piercing ammunition, and equipped with laser sights. One of the FN5-7 firearms was located on the floor of the basement. The other FN5-7 firearm was located on the hip of one of the individuals and subsequently secured by the officers. The third firearm, an AR-style weapon, was located in the storage area underneath the basement staircase.

8. ATF was called to assist with tracing of the three firearms recovered from the scene, and I responded to the scene at 1454 Ruskin Road. I submitted an urgent trace (assigned trace number T20190391833) to the ATF tracing center following the recovery of the FNH, Model Five-Seven, 5.7 caliber, pistol with serial number 386334252. The tracing center was able to determine almost immediately that firearm was purchased by **WELLS** on August 29, 2019. Based on this information, ATF agents were able to determine that only 67 days had passed from the initial purchase of the firearm to its recovery during the November 4, 2019 search at 1454 Ruskin Road.

9. The firearm was a part of a multiple handgun sale in which an additional FNH Model Five-Seven was purchased. This sale does not match the other FNH Model Five-Seven recovered at the scene. Through additional investigation, ATF agents determined that **WELLS** had also purchased six (6) ATI, model Omni Hybrid Maxx, 5.56mm caliber, pistols with varying serial numbers. One of the pistols had serial number NS223579, and this firearm was also recovered at 1454 Ruskin Road during the search. This purchase occurred on September 9, 2019 meaning that only 57 days had passed between its initial purchase and its recovery.

10. Based upon this information Task Force Officer ("TFO") Joe Ruchti, DEA SA Darren Wilson, and I went to **WELLS'** address located at 1877 Wayne Madison Rd. in Trenton, Ohio in an attempt to interview him. Once on scene, I knocked on the door, and **WELLS** answered. **WELLS** invited the agents and TFO into his home, where we conducted an interview of **WELLS** in his living room and kitchen. **WELLS** was advised that he was not under arrest and that this interview was entirely consensual and could be stopped at any point if **WELLS** so desired.

11. **WELLS** was advised that the reason for the interview was that some firearms that he purchased recently had been recovered by law enforcement during an investigation and that the agents wanted to follow up with him about the purchase. **WELLS** stated that he had bought several firearms in the last few months at Thompson's Guns, located at 7989 Hinkle Rd., Middletown, Ohio, which is a federally licensed firearms dealer ("FFL"). **WELLS** stated that he personally owns two firearms that he keeps at his home. **WELLS** stated that the other firearms that he purchased recently were purchased for a friend of his. **WELLS** identified that individual, who shall be referred to for purposes of this affidavit as "A.M.".

12. **WELLS** stated that he has known A.M. for several years and knows that A.M. used to manage a gun store called Freedom Firearms. **WELLS** stated that A.M. would contact **WELLS**, usually via text message, and ask **WELLS** to purchase firearms for him. **WELLS** would then go online, find the best pricing he could for the firearms requested by A.M., and then order them. **WELLS** admitted to paying for the firearms with his credit card. **WELLS** would have the firearms sent to Thompson's Guns. **WELLS** would then go to Thompson's Guns, fill out an ATF Form 4473, and pay a $10 transfer fee to the FFL.

13. **WELLS** advised that after he took possession of the firearms, **WELLS** would contact A.M. to arrange a time and place to give them to A.M. A.M. would then meet **WELLS** and pay cash for the firearms. **WELLS** stated that A.M. would provide an additional $25-$30 per firearm on top of the initial purchase price to **WELLS**.

14. **WELLS** stated when asked that, to his knowledge, A.M. does not have a criminal record. Agents asked **WELLS** why he thinks that A.M. would come to **WELLS** to purchase firearms rather than purchasing them himself. **WELLS** replied that he thought that A.M. was trying to avoid drawing attention to himself by purchasing so many firearms.

15. I asked **WELLS** if he would mind showing the agents his text conversations with A.M. **WELLS** agreed to do so, went and retrieved his cell phone from his bedroom, unlocked it and handed it to me. I reviewed the text conversation between A.M. and **WELLS**, which confirmed **WELLS'** story. The messages showed that A.M. sent screen grabs of firearms' websites to **WELLS** and advised how many of each firearm A.M. wanted. I also observed a conversation about pricing and a desire to shop around and find the best deal. **WELLS** then sent screen grabs of receipts and shipping information to A.M. and kept A.M. updated on order status. **WELLS** then advised A.M. when **WELLS** had taken possession of the firearms and making arrangements for a location to meet for the transaction.

16. I asked **WELLS** if he recalled filling out the ATF Form 4473 for each purchase he made, to which he stated that he did. I asked if **WELLS** recalls checking all of the boxes on the form, and specifically if **WELLS** recalls the box which asks the purchaser if they are purchasing the firearm for himself and not for anyone else. **WELLS**

3

stated that he does recall that box and that he always checked the "Yes" box, even though he knew that he was purchasing the firearms to be provided to A.M.

17. On November 5, 2019, SA Ken Pitney went to Thompson's Guns and obtained copies of the ATF Form 4473's completed by **WELLS** for his purchases. In reviewing the ATF Form 4473 for the purchase of the FNH, Model Five-Seven, 5.7 caliber, pistol with serial number 386334252, I know that it was completed and signed by **WELLS** on August 29, 2019. In reviewing the ATF Form 4473 for the purchase of the ATI, model Omni Hybrid Maxx, 5.56mm caliber, pistol with serial number NS223579, I know that it was completed and signed by **WELLS** on September 9, 2019. On those forms, **WELLS** checked box 11a, which states:

> Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.

18. Based on my training and experience, I know that in order to purchase firearms from an FFL, one must complete an ATF Form 4473 and pass a National Instant Criminal Background Check System (NICS) background check. I further know that it is a crime to lie on the ATF Form 4473.

19. Based on the foregoing, I believe there is probable cause to believe that **WELLS** committed the following: that on or about August 29, 2019 and on September 9, 2019, in the Southern District of Ohio, **WELLS** did knowingly make false statements or representations with respect to information required by Chapter 44 of Title 18 of the United States Code, in violation of 18 U.S.C. § 924(a)(1)(A).

_____
John Remick-Cook, Special Agent
Bureau of Alcohol, Tobacco, and Firearms

Subscribed and sworn to before me this 5th day of November, 2019.

_____
Hon. Sharon L. Ovington
UNITED STATES MAGISTRATE JUDGE

4